SCHOOL DISTRICT OF CENTRAL CITY, NEBRASKA, ET AL. V. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY.

FILED SEPTEMBER 19, 1900. No. 9,999.

Statutes: AGGREGATE SCHOOL TAX. Under section 24, subdivision 14, chapter 79, Compiled Statutes, 1895, the aggregate school tax for all school purposes in any one year is restricted to a sum not exceeding two per cent on all the taxable property of the district.

ERROR to the district court for Merrick county. Tried below before SULLIVAN, J. *Affirmed.*

*E. E. Ross* and *W. T. Thompson*, for plaintiffs in error.

*J. W. Deweese* and *F. E. Bishop*, contra.

NORVAL, C. J.

In 1896 the county board of Merrick county, at the instance of the board of education of the school district of Central City, levied on the property embraced in said district a tax of 20 mills on the dollar valuation for general school purposes and likewise a tax of 10 mills on the dollar valuation to pay interest on outstanding school district bonds and to create a sinking fund for their ultimate

redemption. The Chicago, Burlington & Quincy Railroad Company, being a taxpayer of the district, paid to the county treasurer the taxes so levied to the amount of 20 mills on the assessed valuation of its property, and then instituted this suit to enjoin the collection of the tax in excess of 20 mills, claiming that the same is illegal and void. The defendants filed an answer to the petition, to which the plaintiff interposed a general demurrer, which was sustained by the court, and a perpetual injunction against the collection of the tax in excess of 20 mills was granted. The defendants have prosecuted a petition in error.

The sole question presented by the record is whether or not the county board of Merrick county possessed the power to levy, in any one year, a tax of more than 20 mills on the dollar of the taxable property of the school district of Central City for school purposes. Said school district is governed, for the most part, by the provisions of subdivision 14, chapter 79, Compiled Statutes, 1895. Section 23 thereof provides "that the board of education shall annually, during the month of June, report to the county commissioners an estimate of the amount of funds required for the support of the schools during the fiscal year next ensuing, the amount of funds required for the purchase of school sites, the erection of school buildings, the payment of interest upon all bonds issued for school purposes, and the creation of a sinking fund for the payment of such indebtedness; and the county commissioners are hereby authorized and required to levy and collect the necessary amounts the same as other taxes; a duplicate of said certificate shall be filed by the board with the city council." Section 24 of subdivision 14 declares "that the aggregate school tax shall in no one year exceed two per cent, and in cities of the first class having over twenty-five thousand (25,000) population the school tax shall not exceed fifteen (15) mills upon all the taxable property of the district," etc. By section 26 it is made the duty of the board of education to provide for the pay-

ment of interest on school bonds before the same become due, and immediately after the expiration of one-half of the time for which said bonds are issued to create a sinking fund for the ultimate redemption of said bonds when they shall have become due. By section 1 of subdivision 15 of said chapter 79 authority is conferred on each school district to issue bonds for the purpose of purchasing a site for, and erecting thereon a schoolhouse or schoolhouses, and furnishing the same. Section 13 of subdivision 15 provides: "It shall be the duty of the board of county commissioners in each county to levy, annually, upon all the taxable property in each school district in such county, a tax sufficient to pay the interest accruing upon any bond issued by such school district, and to provide a sinking fund for the final redemption of the same, such levy to be made with the annual levy of the county, and the taxes collected with other taxes, and when collected shall be and remain in the hands of the county treasurer, a specific fund for the payment of the interest upon such bonds, and for the final payment of the same at maturity," etc. The contention of the defendant is that said section 13 is a special provision relating to the raising of a revenue to pay the bonds issued by school districts and interest thereon, and that section 24 of subdivision 14 relates to school revenues in general, and contains no limitation upon the power to levy taxes for the payment of school district bonds or interest thereon. The district court ruled that the limitation contained in said section 24 applied to all school district taxes; and this construction of the several statutory provisions is not only a reasonable one, but is in line with the decisions of this court. *Wheeler v. City of Plattsmouth*, 7 Nebr., 270; *Burlington & M. R. R. Co. v. York County*, 7 Nebr., 487; *Union P. R. Co. v. Dawson County*, 12 Nebr., 254. These authorities are decisive of the question presented, and they lead to an affirmance of the decision of the district court.

JUDGMENT AFFIRMED.

SULLIVAN, J., not sitting.